IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KELLOGG BROWN & ROOT SERVICES,
INC.,

Plaintiff;

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 14-1200-RGA

------------------------------------------------------------

## MEMORANDUM OPINION

William J. Wade, Esq., Kelly E. Farnan, Esq., RICHARDS LAYTON & FINGER, P.A.,
Wilmington, DE; Herbert L. Fenster, Esq. (argued), Raymond B. Biagini, Esq., Alejandro L.
Sarria, Esq., John W. Sorrenti, Esq., MCKENNA LONG & ALDRIDGE LLP, Washington, DC.

Attorneys for Plaintiff Kellogg Brown & Root Services, Inc.

Charles M. Oberly, III, Esq., United States Attorney for the District of Delaware, Jennifer Welsh,
Esq., Assistant United States Attorney for the District of Delaware, Wilmington, DE; Joyce R.
Branda, Esq., James G. Touhey, Jr., Esq., Rupert M. Mitsch, Esq., Conor Kells, Esq. (argued),
Philip D. MacWilliams, Esq., U.S. DEPARTMENT OF JUSTICE, Washington, DC.

Attorneys for Defendant United States of America.

April 30, 2015

*Richard G. Andrews*

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendant United States of America's Motion to Dismiss

for Lack of Subject Matter Jurisdiction and Failure to State a Claim. (D.I. 11). The motion has

been fully briefed (D.I. 13, 20 & 23), and oral argument was held on April 13, 2015. For the

reasons set forth herein, the United States' motion is granted.

## I.      BACKGROUND

Plaintiff Kellogg Brown & Root Services, Inc. (KBR) filed its two-count complaint on

September 17, 2014. (D.I. 1). Count I alleges a violation of the Federal Tort Claims Act

(FTCA) arising from the Defense Contract Audit Agency's (DCAA) negligent audit, seeking

damages for attorney's fees incurred while appealing KBR's contract disputes before the Armed

Services Board of Contract Appeals (ASBCA). (*Id.* at 27). Count II alleges a violation of the

FTCA arising from DCAA's negligent audit, seeking damages for attorney's fees incurred while

defending against the Department of Justice's (DOJ) action under the False Claims Act filed in

the United States District Court for the District of Columbia. (*Id.* at 31). I find that both counts

of KBR's complaint are barred by the discretionary function exception, and that I therefore do

not have subject matter jurisdiction over this lawsuit. Thus, this opinion does not address the

United States' arguments relating to the Contract Disputes Act, the statute of limitations, the

interference with contract rights exception to the FTCA, and the application of Texas tort law.

## II.     LEGAL STANDARD

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the

court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d

Cir. 2000). "In reviewing a facial attack, the court must only consider the allegations of the

complaint and documents referenced therein and attached thereto, in the light most favorable to

the plaintiff." *Id.* "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.*

"Sovereign immunity not only protects the United States from liability, it deprives a court of subject matter jurisdiction over claims against the United States." *Richards v. United States*, 176 F.3d 652, 654 (3d Cir. 1999). "The FTCA waives the federal government's sovereign immunity with respect to tort claims for money damages." *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (citing 28 U.S.C. § 1346(b)(1)). "The discretionary function exception limits that waiver, eliminating jurisdiction for claims based upon the exercise of a discretionary function on the part of an employee of the government." *Id.* (citing 28 U.S.C. § 2680(a)). Under the discretionary function exception, the government retains sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The plaintiff . . . bears the burden of demonstrating that [its] claims fall within the scope of the FTCA's waiver of government immunity, but [t]he United States has the burden of proving the applicability of the discretionary function exception." *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008) (third alteration in original) (citations and internal quotation marks omitted). "If the discretionary function exception applies, the district court lacks subject matter jurisdiction over the case." *Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001).

## III.   DISCUSSION

The Supreme Court has established a two-part test to determine whether the discretionary function exception applies. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). First, the court must consider whether the action "involves an element of judgment or choice." *Id.* Second, the court must determine whether the judgment exercised "is of the kind that the discretionary function exception was designed to shield." *Id.* In other words, the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *United States v. Gaubert*, 499 U.S. 315, 324 (1991). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325. The United States characterizes its motion as a facial attack on KBR's complaint, and KBR does not dispute this contention. (D.I. 13 at 10). I view the motion as a facial attack because the United States relies solely on "the allegations of the complaint and documents referenced therein and attached thereto." *Gould Elecs.*, 220 F.3d at 176.

### A.   Count I: KBR's ASBCA Appeal

#### 1.   Discretionary Element

Under the first prong of the *Berkovitz* test, the contracting officer for the Army Sustainment Command in Rock Island, Illinois (ASC-RI) and DCAA both performed functions with significant discretionary elements. The United States argues that the ASC-RI contracting officer exercised discretion when deciding whether to recognize the costs associated with KBR's

3

use of personal security contractors (PSCs) under the LOGCAP III contract, and that DCAA acted in an advisory role to the contracting officer. (D.I. 13 at 19). KBR appears to agree about the relationship between DCAA and the contracting officer, arguing that the contracting officer was an active participant in DCAA's professional malpractice, and that "DCAA's audit work was performed in lockstep with the [contracting officer]." (D.I. 20 at 32–33). KBR alleges in its complaint that the "ASC-RI verbally requested that DCAA . . . calculate the total amount of PSC costs charged to the LOGCAP III contract, and issue an audit report containing DCAA's findings and conclusions." (D.I. 1 at 21 ¶ 72).

DCAA's audit report makes clear that "ASC's position is that costs associated with privately acquired security should not be charged or paid under the contract," and that "[t]he purpose of [DCAA's] examination was to determine if [KBR's] submission adequately identified armed private force protection costs." (D.I. 13-3 at 2). The audit report further states that "[t]he Contracting Officer has interpreted Clause H-16 of the LOGCAP III to prohibit the use of armed private force protection in conjunction with contractor performance." (*Id.*). Accepting KBR's factual allegations as true, and consistent with the audit report, it is undisputed that DCAA was acting at the behest of the ASC-RI when conducting its audit of KBR's PSC costs. KBR does not allege that DCAA had the authority to interpret the LOGCAP III contract, or to decide what costs were allowable under the contract. Rather, KBR alleges that DCAA followed the instruction of the ASC-RI, whose contracting officer interpreted Clause H-16 of the LOGCAP III contract in a way that prohibited reimbursement of PSC costs. (D.I. 1 at 20 ¶ 68 & 21 ¶ 72). Thus, the complaint makes clear that the ASC-RI contracting officer's decision to disallow PSC costs under the contract caused the harm alleged in KBR's complaint, not the DCAA audit.

Further, the contracting officer's interpretation of the contract involved professional judgment, and therefore constitutes a discretionary decision.

In a similar case involving the Department of Housing and Urban Development (HUD), the D.C. Circuit held that HUD's decision to suspend government contractors was "impossible to sever" from the underlying investigation of the contractors' conduct, and that both acts were discretionary functions. *Sloan*, 236 F.3d at 761. The court found that the "investigation is inextricably tied to the discretionary, quasi-prosecutorial decision to suspend plaintiffs from governmental contracting." *Id.* at 762. Further, the court noted that the plaintiffs' complaint "does not allege any damages arising from the investigation itself, but only harm caused by the suspension to which it assertedly led." *Id.* Here, KBR's complaint does not allege any damages arising from DCAA's audit, but only harm caused by the decision of the ASC-RI contracting officer to prohibit reimbursement of PSC costs under the LOGCAP III contract. Like the plaintiffs in *Sloan*, KBR focuses on DCAA's audit, rather than the contracting officer's decision not to allow PSC costs under the contract. As the court found in *Sloan*, it is impossible to sever the DCAA audit from the decision to prohibit PSC costs, and even if the two could be severed, both are discretionary functions. The ASC-RI contracting officer's decision to prohibit PSC costs was a discretionary decision that was "inextricably tied" to the DCAA audit. Therefore, the DCAA audit caused no injury distinct from the harm caused by the contracting officer's decision, and the audit "cannot by itself support suit under the FTCA." *Id.*

In the alternative, the United States argues that DCAA, in its capacity as auditor, exercised professional discretion when performing its audit. (D.I. 13 at 19). KBR argues that DCAA's audit did not involve discretionary judgment because DCAA auditors failed to comply with mandatory auditing standards and procedures. (D.I. 20 at 26). KBR cites the Defense

Contract Audit Manual (DCAM) and the Generally Accepted Government Auditing Standards (GAGAS) as the sources for such standards. (*Id.* at 27). The United States, however, points out that GAGAS and DCAM both require DCAA auditors to use "professional judgment" when conducting audits. (D.I. 13 at 19). For example, GAGAS states that "auditors are responsible for using professional judgment when establishing scope and methodologies for their work" (D.I. 13-9 at 5 ¶ 1.25), and provides that "[p]rofessional judgment should be used in planning and performing audits." (*Id.* at 6 ¶ 3.33). GAGAS also states that the professional judgment standard "requires auditors to exercise reasonable care and diligence and to observe the principles of serving the public interest" (*id.* at 6 ¶ 3.34), and explains that "[a]uditors should use professional judgment in determining the type of assignment to be performed and the standards that apply to the work." (*Id.* ¶ 3.35). DCAM states that the auditor "must use professional judgment in (1) selecting the procedures and techniques best suited to the audit objectives, and (2) determining the scope of the audit in each instance." (D.I. 13-10 at 3 ¶ 0-002(b)). Contrary to KBR's argument, GAGAS and DCAM make clear that DCAA auditors must use discretionary judgment when performing audits.

Additionally, DCAA's failure to meet certain standards set by GAGAS and DCAM does not eliminate the discretionary nature of DCAA's audit. The court in *Sloan* held that "[a]lthough HUD rules require that certain conditions be met before a suspension may issue, that requirement does not convert the decision into a nondiscretionary act." *Sloan*, 236 F.3d at 760 (citation omitted). The court in *Sloan* also rejected the argument that "standards of professional practice constrain HUD's auditors during the investigatory phase and preclude application of the discretionary function exception." *Id.* at 761. The plaintiffs in *Sloan* argued that "the actions of government auditors are not discretionary because compliance with federal audit guidelines is

mandatory." *Id.* at 762–63. The court, however, held that the government's auditing standards "leave ample room for the exercise of professional judgment." *Id.* at 763. KBR asserts a similar argument to that of the plaintiffs in *Sloan*, arguing that DCAA's failure to meet mandatory auditing standards makes DCAA's audit non-discretionary. I have the same response as the court in *Sloan*; I find this to be an "untenable contention." *Id.* at 764. There is no question that GAGAS and DCAM provide "ample room for the exercise of professional judgment," and require auditors to use professional judgment when planning and conducting audits. Therefore, DCAA's audit involves professional judgment, and constitutes a discretionary action.[1]

## 2. Considerations of Public Policy

Under the second prong of the *Berkovitz* test, the ASC-RI contracting officer's decision not to allow PSC costs under the LOGCAP III contract and the DCAA's audit of such costs both involved substantial public policy considerations. KBR makes clear in its complaint that DCAA's audit was initiated in response to pressure from Congress. (D.I. 1 at 3 ¶ 10). The court in *Sloan* highlighted that HUD's audit was part of a national audit "to determine whether lead-based paint abatement at the facility was in compliance with the demolition contract." *Sloan*, 236 F.3d at 764. Further, the court noted that the auditing standards cited by plaintiffs require HUD to determine "the extent to which the desired results or benefits established by the legislature or other authorizing body are being achieved." *Id.* The court ultimately held that "the auditors' decisions were undertaken for policy reasons of significant concern to HUD, including the protection of tenants living in HUD-funded housing." *Id.* Here, KBR alleges that the ASC-

---

[1] KBR also argues in a footnote that the Court should allow discovery on whether and how DCAA trains its auditors and whether the auditors who performed the audit knew they were required to comply with GAGAS. (D.I. 20 at 30 n.18). This discovery, however, is unnecessary. The United States' motion is a facial attack, and thus, my decision is based solely upon the factual allegations and documents referenced in KBR's complaint, viewed in the light most favorable to KBR.

7

RI's decision to have DCAA conduct an audit was in direct response to a congressional investigation addressing PSC costs under government contracts. (D.I. 1 at 19–20 ¶¶ 63–70). Congress was apparently concerned about the amounts of taxpayer dollars being allocated to PSC costs (*id.* at 19–20 ¶¶ 64 & 69), and the effects such costs were having on the military budget. In response to this pressure, the contracting officer decided to prohibit PSC costs under the LOGCAP III contract, and instructed DCAA to conduct an audit of KBR's PSC costs. Both decisions involved Congress's budgetary concern, which is a fundamental matter of public policy. Therefore, the discretionary function exception applies to Count I of KBR's complaint.

### B.     Count II: DOJ's False Claims Act Suit

#### 1.     Discretionary Element

DOJ's decision to initiate a civil fraud action against KBR under the False Claims Act is a fundamental discretionary function. "The decision to initiate a prosecution has long been regarded as a classic discretionary function." *Sloan*, 236 F.3d at 760. "The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Butz v. Economou*, 438 U.S. 478, 515 (1978). "[T]he exercise of prosecutorial judgment will usually insulate investigating officers from liability." *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1284 (9th Cir. 1998).

KBR argues that the injury-causing conduct in the present case was DCAA's negligently performed audit. (D.I. 20 at 26). The Third Circuit has made clear, however, that "the fact that we must accept the plaintiffs' version of the facts as true does not mean that we must accept plaintiffs' characterization of those facts." *Fisher Bros. Sales v. United States*, 46 F.3d 279, 286 (3d Cir. 1995). The Ninth Circuit has also recognized that "[c]ourts are not required to, and

8

should not, simply look at the surface of a complaint for the purpose of ascertaining the true basis of an attack upon something the government has done." *Gen. Dynamics*, 139 F.3d at 1283. A court "may take cognizance of the fact that a target has been selected for the purpose of evading the discretionary choice of the persons who actually caused the damage." *Id.* "Where . . . the harm actually flows from the prosecutor's exercise of discretion, an attempt to recharacterize the action as something else must fail." *Id.* at 1286.

In *Fisher Bros.*, the Third Circuit rejected the plaintiffs' characterization of their claims as "based upon" the negligent conduct of laboratory technicians, and found that the complaint was merely an attempt to avoid application of the discretionary function exception. *Fisher Bros.*, 46 F.3d at 285–86. The court held that the plaintiffs' injuries "were caused by the [FDA] Commissioner's decisions and, as a matter of law, their claims are therefore 'based upon' those decisions." *Id.* at 286. In *General Dynamics*, the Ninth Circuit found that "[plaintiff] seeks to posture its case as an attack on DCAA rather than as an attack on the prosecutors." *Gen. Dynamics*, 139 F.3d at 1283. The court found that the prosecutors "had a report from the DCAA, but the decision to prosecute was all their own." *Id.* at 1286. The court noted that the prosecutors "were not required to prosecute, and were not forced to do so," and "[n]othing prevented them from gathering further information before they proceeded." *Id.* The court further stated that "[n]othing stopped the prosecutors from investigating further by speaking to those who had negotiated the contract on behalf of the government." *Id.* The court made clear that "[p]rosecutors have access to a great deal of information beyond that submitted by any one agency, such as the DCAA," and that they "could have had even more information if they had chosen to pursue it." *Id.* at 1285. The court recognized that "there is no danger to the FTCA when a totally separate exercise of discretion stands between the generators of a report and the

commencement of a prosecution." *Id.* In light of this, the court held that DOJ exercised "broad based discretion which was independent of the DCAA in every sense of the word." *Id.*

KBR argues that unlike *General Dynamics*, DOJ was not "totally separate" from DCAA when deciding whether to prosecute KBR, and that DCAA's audit was "performed in lockstep" with DOJ attorneys. (D.I. 20 at 32–34). As in *General Dynamics*, DOJ in this case had the ultimate decision about whether to prosecute KBR for civil fraud. While DOJ attorneys possessed DCAA's audit, the decision to file an action under the False Claims Act was "all their own." DOJ attorneys decided to initiate a civil fraud claim against KBR based on the information available, and could have gathered more information prior to filing suit, but did not do so. Assuming, as alleged, that DOJ made a big mistake in filing the action, it does not alter the discretionary nature of the prosecutorial judgment to proceed. Therefore, DOJ's decision to bring suit against KBR was a discretionary action.[2]

## 2. Considerations of Public Policy

There were major public policy considerations involved in DOJ's decision to initiate an action against KBR under the False Claims Act. As indicated above, KBR alleges that DCAA issued its audit report "amid persistent political pressure from Congress." (D.I. 1 at 3 ¶ 10). KBR also alleges that DOJ initiated the action against KBR based on DCAA's audit report. (*Id.* at 25 ¶ 98). When DCAA issued its audit report, Congress was investigating the amount of taxpayer dollars being spent by government contractors on PSCs. In bringing an action under the False Claims Act, DOJ was attempting to protect the United States from fraudulent claims under

---

[2] At oral argument, if memory serves, KBR's counsel conceded that DOJ's decision to bring the False Claims Act case involved the exercise of discretion.

government contracts. Such an action has a clear basis in public policy. Therefore, the discretionary function exception applies to Count II of KBR's complaint.

## IV.    CONCLUSION

For the reasons stated above, the United States' Motion to Dismiss is granted. Counts I and II will be dismissed. A separate Order consistent with this Memorandum Opinion will be issued.